# Armstrong v. Citizens Union National Bank.

(Decided June 8, 1937.)

WOODWARD, DAWSON & HOBSON for appellant.

BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Anna H. Armstrong, brought this action against the Citizens Union National Bank to recover the sum of $10,500 alleged to have been lost by her by reason of her purchase of $12,000 of bonds which she was induced to make by the representations of J. H. Schnell, an assistant cashier of the bank. The trial court sustained the bank's motion for a peremptory instruction in its favor, and the plaintiff has appealed.

She alleged in her petition that the bank, through Schnell as its agent, purchased for her in July, 1927, $12,000 of real estate bonds issued by the Equitable Bond & Mortgage Company, and delivered the bonds to her upon the representation that the bonds were "good and satisfactory to defendant as collateral at face value," and that the bonds for which she paid $12,000 upon the defendant's representation that they were good, "are not worth in excess of $1,500.00 and were not worth more than that sum when they were purchased"; that in February, 1929, she discovered for

the first time that the bonds were not good and were not acceptable to the defendant at face value; and that the defendant knew they were not good, or could have known thereof by the exercise of the slightest care.

The appellant resided in Louisville prior to 1919 when she married and moved to Piqua, Ohio, where she resided until her husband's death in 1922. Before her marriage, she knew Schnell, who was employed as a teller in a bank in Louisville. She returned to Louisville after her husband's death, and in May, 1927, deposited $12,000 in the Citizens Union National Bank. She had borrowed money from time to time from the Citizens Union National Bank after her return to Louisville, but had retained her checking account at a bank in Piqua. She testified that, at Schnell's suggestion, she transferred her checking account from the Piqua, Ohio, bank to the Citizens Union National Bank. In June, 1927, she talked with Schnell about investing the money she had on deposit in the bank, and she told him she wanted to invest it in bonds which the bank would accept as collateral on her note. Schnell recommended the bonds of the Equitable Bond & Mortgage Company, and on July 1, 1927, she purchased $9,000 of these bonds, and on the following day she purchased $3,000 of the bonds, for all of which she paid par. She gave two checks, one for $9,000 and one for $3,000, payable to the order of the Equitable Bond & Mortgage Company. The bonds were delivered to Schnell who placed them in his own safety deposit box, where they remained until 1929. He clipped the coupons when due, and deposited the proceeds in Mrs. Armstrong's account.

The proof shows that the real estate bonds of the Equitable Bond & Mortgage Company, similar to the ones purchased by appellant, were bought and sold at approximately par until some time in 1929. During the depression, they declined in value until they sold for less than 10 cents on the dollar. There is no proof that any one connected with the bank, other than Schnell, knew anything about the transaction until February, 1929. The bank was not interested in the sale of the bonds, and received no benefit from their sale, directly or indirectly. Schnell received a secret commission of $150 from the salesman representing the Equitable Bond & Mortgage Company, who received credit for

making the sale. There is no evidence that the bonds were not good when they were purchased by appellant in 1927 or that they were not acceptable at that time by the bank as collateral. They had a market value of approximately par for more than eighteen months after they were purchased by Mrs. Armstrong, and the mere fact that they later declined greatly in value does not necessarily lead to the conclusion that they were worthless or of little value in July, 1927. Many securities, in fact, most of them, theretofore considered safe investments by prudent business men, suffered a similar fate during 1929 and subsequent years. The failure of the proof on this point alone required the trial judge to sustain defendant's motion for a peremptory instruction in its favor

Furthermore, the representations which Mrs. Armstrong claims Schnell made to her were outside the scope of his real or apparent authority as an assistant cashier of the Citizens Union National Bank. His sole duty was to handle the opening of new accounts, and it was shown that he was not authorized to advise customers of the bank with respect to investments. He was not selling to appellant securities owned by the bank or in which it had any interest or for the sale of which it received a commission. The purchase was made directly from a corporation not connected with the bank, and Schnell, in recommending the bonds, was not acting within the apparent scope of his authority as assistant cashier of the bank. People's State Bank v. Hill, 210 Ky. 222, 275 S. W. 694; Lemke v. First National Bank of Appleton, 190 Wis. 223, 208 N. W. 946; Bailey v. Union National Bank, 159 Tenn. 659, 21 S. W. (2d) 393.

A cashier of a bank possesses certain powers which are inherent in the position by virtue of judicial decisions or banking usages, and any act done by him on behalf of the bank in fulfillment of these inherent powers and duties binds the bank. Recommending investments in which the bank has no interest is not a function, however, which is inherent in the position of cashier. "The cashier of a bank has no incidental authority to make any declarations binding the bank not within the scope of his ordinary duties and not in the interest of the bank. And the bank is not bound by unauthorized representations of the cashier not within

the apparent scope of his authority." Michie on Banks & Banking, vol. 4, p. 181.

Other reasons are assigned by the appellee for affirming the judgment, but we deem it unnecessary to consider them.

The judgment is affirmed.